## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **TAMMY LYNN HINSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-737-CWB** |
| | ) | |
| **KILOLO KIJAKAZI,[1]** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

### I.    Introduction and Administrative Proceedings

Tammy Lynn Hinson ("Plaintiff") filed an application for Supplemental Security Income under Title XVI of the Social Security Act on July 11, 2018 wherein she alleged disability due to major depression disorder, psychotic features, remembering things, swelling in feet, and obesity. (Tr. 18, 56-57, 69, 156).[2, 3]   Plaintiff's claim was denied at the initial level on October 31, 2018

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to pages in the transcript are denoted by the abbreviation "Tr."

[3] Plaintiff alleged a disability onset date of October 31, 2015. (Tr. 57). However, an individual cannot receive SSI for any period prior to the month in which he or she applied for SSI. *See* 20 C.F.R. § 416.330; 20 C.F.R. § 416.335 ("If you file an application after the month you first meet all the other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month.").   Thus, the relevant period in Plaintiff's case is from July 2018, the month in which she applied for SSI, through the date of the ALJ's decision. (Tr. 18, 26, 56, 69).   *See* 20 C.F.R. §§ 416.330, 416.335; *Stone v. Comm'r of Soc. Sec. Admin.*, 596 F. App'x 878, 879 (11th Cir. 2015) ("For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.").

(Tr. 18, 71), and Plaintiff requested *de novo* review by an administrative law judge ("ALJ") (Tr. 18, 76).  The ALJ subsequently heard the case on November 13, 2019 when Plaintiff appeared *pro se* and testified.  (Tr. 18, 30, 32-48).  Testimony also was received from a vocational expert. (Tr. 48-52).  The ALJ took the matter under advisement and issued a written decision on December 17, 2019, that found Plaintiff not disabled.  (Tr. 18-26).

The ALJ's written decision contained the following enumerated findings:

1. Ms. Hinson has not engaged in substantial gainful activity since July 11, 2018, the date that she filed her application (20 CFR 416.971 *et seq.*).

2. Ms. Hinson has the following severe impairments: obesity, major depressive disorder, recurrent episode, with psychotic features, anxiety disorder, and stimulant use disorder (20 CFR 416.920(c)).

3. Ms. Hinson does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After consideration of the entire record, I found that Ms. Hinson retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations. Ms. Hinson could occasionally climb ramps and stairs. She could not climb ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, crouch, and crawl. She cannot work at unprotected heights, or around moving mechanical parts. She cannot operate a motor vehicle as part of her job duties. She can perform simple, routine, and repetitive tasks, but not at a production rate pace (e.g. assembly line work). She can make simple work-related decisions. She can frequently respond appropriately to supervisors, frequently respond appropriately to coworkers, and frequently respond appropriately to the public.

5. Ms. Hinson is capable of performing past relevant work as a Cashier II. This work does not require the performance of work-related activities precluded by Ms. Hinson's residual functional capacity (20 CFR 416.965).

6. The Act identified Ms. Hinson, born on October 30, 1965, as an individual closely approaching advanced age, on the date she filed her application (20 CFR 416.963).

7. Ms. Hinson has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because Ms. Hinson's past relevant work was unskilled (20 CFR 416.968).

9. In determining whether a claimant can make a successful adjustment to other work, I must consider her residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.

10. Ms. Hinson has not been under a disability, as defined in the Social Security Act, since July 11, 2018, the date the application was filed (20 CFR 416.920(f)).

(Tr. 20, 21-22, 25, 26).

On July 17, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to reverse the final decision and to award benefits or, alternatively, to remand the case for a new hearing and further consideration. (Doc. 1 at p. 2; Doc. 13 at p. 17). As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to entry of final judgment by a United States Magistrate Judge (Docs. 19, 20), and the undersigned finds that the case is now ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the final decision is due to be AFFIRMED.

## II.     Standard of Review and Regulatory Framework

Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of*

*Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Reversal is not warranted merely because the court itself would have reached a result contrary to that of the factfinder.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[4]  To make such a determination, the ALJ employs a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

---

[4]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40. The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. at 1240.

III.     **Issues on Appeal**

Plaintiff raises three issues on appeal: (1) whether the ALJ properly evaluated Plaintiff's statements regarding her symptoms and limitations from her mental impairments; (2) whether the ALJ sufficiently developed the record, given that Plaintiff was unrepresented; and (3) whether the ALJ sufficiently accommodated Plaintiff's mental impairments when formulating her RFC.[5] (Doc. 13 at p. 1).

IV.      **Discussion**

A.     **The ALJ's Evaluation of Plaintiff's Subjective Statements**

In determining whether a claimant is disabled, the claimant's symptoms, including pain, are considered to the extent that they are reasonably consistent with objective medical evidence and other evidence.  20 C.F.R. §§ 404.1529(a), 416.929(a).  The Commissioner will consider a claimant's statements about his or her symptoms and any description that claimant's medical sources or nonmedical sources may provide about how the symptoms affect the claimant's activities of daily living and ability to work.  *Id.*  However, a claimant's statements about pain or symptoms alone are not enough to establish the existence of a physical or mental impairment or disability.  *Id.*; SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017); *Turner v. Kijakazi*, No. 1:19-CV-774, 2021 WL 3276596, at *9 (M.D. Ala. July 30, 2021) ("[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms.").  The regulations set out a two-step process for the evaluation of subjective complaints.  *Id.*; SSR 16-3p, 2017 WL 5180304, at *3.  To establish a disability based on testimony of symptoms, the claimant must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming

---

[5] Plaintiff's third and fourth issues were combined into a single issue due to their overlapping nature.  (*See* Doc. 13 at p. 1).

the severity of the alleged symptoms, or (2) evidence establishing that the objectively determined medical condition could be reasonably expected to give rise to the alleged symptoms. *Carroll v. Soc. Sec. Admin., Comm'r*, No. 6:21-CV-00014, 2022 WL 3718503, at *12 (N.D. Ala. Aug. 29, 2022) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)); *see also* 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304, at *3.

"Consideration of a claimant's symptoms therefore involves a two-step process, wherein the SSA first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain." *Mixon v. Kijakazi*, No. 8:20-CV-2991, 2022 WL 2816964, at *3 (M.D. Fla. July 19, 2022); 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304, at *2-3.  Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's symptoms is established, the ALJ must then consider all of the evidence in the record to evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's capacity for work.  SSR 16-3p, 2017 WL 5180304, at *3-4; 20 C.F.R. §§ 404.1529(a)-(c), 416.929(a)-(c); *Stromgren v. Kijakazi*, No. 3:21-CV-908, 2022 WL 1205347, at *5 (N.D. Fla. Mar. 11, 2022), *report and recommendation adopted*, No. 3:21-CV-908, 2022 WL 1204519 (N.D. Fla. Apr. 22, 2022).  In doing so, SSR 16-3p and the regulations require an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain

or other symptoms. SSR 16-3p, 2017 WL 5180304, at *8-9; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ will also consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between claimant's statements and the rest of the evidence, including the history, signs and laboratory findings, and statements by treating and non-treating sources or other persons about how the symptoms affect the claimant. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  "However, Eleventh Circuit case law does not require an ALJ to enumerate every factor in every decision."  *Alexander v. Comm'r of Soc. Sec. Admin.*, No. 6:20-CV-01862, 2022 WL 4291335, at *5 (N.D. Ala. Sept. 16, 2022) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (concluding that the ALJ need not cite to "particular phrases or formulations," but must provide reasons that would enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole).  If the ALJ discredits a claimant's subjective statements, the ALJ "must articulate explicit and adequate reasons for doing so."  *Foote*, 67 F.3d at 1561-62; *Patterson v. Kijakazi*, No. 8:21-CV-359, 2022 WL 3028058, at *3 (M.D. Fla. Aug. 1, 2022).  That is, "[w]here proof of a disability is based upon subjective evidence and a credibility determination is a critical factor in the decision, if the ALJ discredits the claimant's testimony as to his subjective symptoms, the ALJ must either explicitly discredit such testimony or the implication from the ALJ's opinion must be so clear as to amount to a specific credibility finding."  *Martinez v. Comm'r of Soc. Sec.*, No. 21-12116, 2022 WL 1531582, at *2 (11th Cir. May 16, 2022) (citing *Foote*, 67 F.3d at 1562).  "Subjective complaint credibility is the province of the ALJ."  *Williams v. Kijakazi*, No. 2:20-CV-277, 2022 WL 736260, at *2 (M.D. Ala. Mar. 10, 2022) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)).

Plaintiff contends that the ALJ failed to properly apply the Social Security regulations in evaluating her statements regarding the nature and limiting effects of her mental illness and that, as a result, the court is unable to assess how the ALJ evaluated Plaintiff's testimony.  (Doc. 13 at pp. 6-8).  Specifically, Plaintiff contends that the ALJ made only a single, conclusory statement that her statements were "not entirely credible;" that the ALJ failed to list, much less apply, the regulatory factors; that the ALJ failed to provide specific, "clearly articulated" reasons for not crediting her testimony; and that the ALJ failed to cite the record in support of his rejection of her statements.  (*Id*. at pp. 8, 10).

In support, Plaintiff argues that at the first step in evaluating her subjective statements the objective evidence supports her statements about the severity of her symptoms, citing that, despite taking antipsychotic and antidepressant medications, mental status examinations showed that her affect was anxious, restricted, constricted, sad or irritable (Tr. 249, 256, 260, 265, 341), that she had impairment of her short and long-term memory (Tr. 265, 305), that her concentration was "bad," poor or "borderline" (Tr. 250, 305, 386), that her attention was impaired or "borderline" (Tr. 250, 305, 386), that she displayed difficulty comprehending (Tr. 305), and that she had delusional-paranoid thought processes (Tr. 293).  (Doc. 13 at p. 8).

Plaintiff further argues that the ALJ ignored at the second step of the evaluation the regulatory factors of 20 C.F.R. § 416.929(c)(3) and SSR 16-3p, citing her treatment history which showed that she was hospitalized in December 2015 for auditory hallucinations and later for two weeks at a psychiatric hospitalization in May 2016 (Tr. 191-243) and that when she was able she went to Mental Healthcare of Cullman ("MHC") for medication management and psychotherapy between May 2016 and December 2017 (Tr. 244-57, 263-342) and to East Alabama Mental Health Center ("EAMHC") for regular treatment (Tr. 352-59, 369-73, 389-96).  (Doc. 13 at pp. 8-9).

9

Plaintiff also points to her hearing testimony as being consistent with her reports of symptoms to treating and examining sources, demonstrating that her symptoms waxed and waned. (*Id*. at p. 9).  In particular, Plaintiff cites that:  in June 2016, she reported no auditory hallucinations or paranoia, but had continued restlessness (Tr. 255-56); in September 2016, Jack L. Bentley, Jr., Ph.D. noted a history of hallucinations, paranoia and social isolation (Tr. 259); in November 2016, she reported auditory hallucinations and occasional depression (Tr. 291); in February 2017, she reported symptoms of depressed mood and that her auditory hallucinations had worsened (Tr. 335); in August 2017, she reported continued depression, sleep disturbance and anxiety and that she had auditory hallucinations almost daily (Tr. 310-11); in May 2018, she complained of increased depression, poor sleep, and irritability, but denied auditory hallucinations (Tr. 373); and in September 2018, she explained that despite medication, she still heard voices sometimes (Tr. 381).  (Doc. 13 at p. 9).

Lastly, Plaintiff argues that her testimony also was consistent with her, and her mother's statements in the State agency function reports regarding Plaintiff's daily activities.  (*Id*.)  According to a Third-Party Function Report, Plaintiff's mother, Brenda Linton, noted that Plaintiff was unable to work because of major depression and hearing voices, and that "she may not sleep for days" (Tr. 176), that she must remind Plaintiff to take her medications and that "she forgets a lot (Tr. 177), that she does not socialize with anyone outside of her family (Tr. 179-80); and that as a result of her depression and hearing of voices, she had problems with memory, completing tasks, concentration, understanding, and following instructions (Tr. 180).  (Doc. 13 at pp. 9-10).  Plaintiff cites to her own responses in her function report as being consistent with her mother's account, stating that "[it is] hard [to] keep my mind on what I am doing," and that she feels "fear all the time" (Tr. 185, 189).  (Doc. 13 at p. 10).

In determining Plaintiff's RFC, the ALJ explained:

> In making this finding, I considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p. I also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c.

(Tr. 22).

Upon an examination of the evidence in the record, the ALJ stated:

> After careful consideration of the evidence, I found that Ms. Hinson's medically determinable impairments could reasonably be expected to cause her alleged symptoms. However, I found that Ms. Hinson's statements concerning the intensity, persistence and limiting effects of these symptoms not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 23).

In reaching this conclusion, the ALJ considered Plaintiff's hearing testimony:

> Ms. Hinson testified she lives with her mother, but in the past lived on her own. She said she has a driver's license, but does not drive often. Ms. Hinson said she does not have health insurance. Thus, she testified that she could not see her psychiatrist and therapist more often. Ms. Hinson said she has [not] seen any medical source since July 2019. She described herself as overweight, but did not identify other physical impairments. Ms. Hinson stated that she did not know how she could meet the physical demands of a job, as she had not worked in a long time and because she is 54 years old.
>
> Ms. Hinson also alleged that she could not work due to depression with psychotic features. She testified that her mental problems began in 2015, with such symptoms as difficulty concentrating and hearing voices. She said she has comprehension problems, and has to read things repeatedly to understand them. Ms. Hinson described a psychiatric hospitalization that occurred at Brookwood. Doctors there started her on psychiatric medications. She said she now takes Invega so that the voices will stop. She also takes Cymbalta for depression. She said she sees Dr. Fernando Lopez for medication at East Alabama Mental health once every three months. She said she also goes there for therapy once every six months. She opined that the medication helped some. She opined that therapy helped more, but, as noted above, testified that her lack of health insurance limited her ability to obtain care. She said she went to an emergency room for hearing voices in 2015, and then tried to commit suicide. She said she still hears voices every day. She said she has good

days and bad days with her depression. Ms. Hinson testified that, on a bad day she
could not get out of bed.

(Tr. 22-23, 38-47).

In addition to her testimony, the ALJ considered the statements made by Plaintiff and her
mother in their function reports, noting that Plaintiff "had no problems performing personal care
activities," that she "occasionally engaged in such routine daily activities as preparing simple
meals or doing light cleaning," she did laundry on an occasional basis, and that she reported that
she generally stayed home and watched television.  (Tr. 23, 173, 177, 179, 183, 185, 187).  The
ALJ noted also that the function reports reflected that Plaintiff reportedly does not finish tasks that
she starts, that she does not follow written instructions or spoken instructions well, and that she
had problems handling stress or changes in routine.  (Tr. 23, 180-81, 188-89).  The ALJ noted that
Plaintiff reported that she got along well with authority figures and that she had not used drugs or
alcohol since 2015.  (Tr. 23, 166-67, 172, 189, 204-05).

The ALJ then summarized the objective medical evidence regarding her mental
impairments as follows:

> In December 2015, Ms. Hinson presented at the emergency room (ER). She
> reported that she had been hearing voices for two weeks. (Exhibit B1F/14). She
> further reported using methamphetamine for 29 years and fentanyl for five years.
> Ms. Hinson stated that she had stopped using these substances a week before she
> started hearing voices. (Exhibit B1F/14-15).
>
> On May 11, 2016, Ms. Hinson began a two-week psychiatric hospitalization at
> Brookwood Medical Center. She had presented at the ER complaining of
> depression, suicidal thoughts, and hallucinations. (Exhibit B2F). She reported no
> prior psychiatric treatment or psychiatric medication management. (Exhibit B2F).
>
> On May 26, 2018, Ms. Hinson began psychiatric medication management and
> therapy with prescriptions for Invega 3 mg, Ativan .5 mg, and Cymbalta 60 mg.
> (Exhibit B5F/14). She reported improvement at follow-up examinations through
> November 2016, when Ms. Hinson reported an increase in hallucinations. Doctors
> responded by increasing the dosage of Invega to 6 mg. (Exhibit B5F/25, 29).
> Ms. Hinson continued with psychiatric medication management and psychotherapy

with changes in prescriptions through April 2018, when her doctor increased Cymbalta to 90 mg daily. The doctor also increased Invega to 9 mg daily. (Exhibit B6F/39).

In May 2018, Ms. Hinson also started treatment for her stimulant use disorder, in sustained remission, and major depressive disorder, in partial remission, recurrent episode, with mood-congruent psychotic features. She participated in this treatment at East Alabama Mental Health Center. (Exhibit B7F; Exhibit B11F). Throughout 2018 and 2019, Ms. Hinson reported overall improvement with mood stability but she continued to report that she experienced auditory hallucinations. (Exhibit B7F; Exhibit B11F). Despite these complaints, doctors have not increased the doses of Ms. Hinson's prescriptions for Cymbalta or Invega. (Exhibit B7F; Exhibit B11F).

Treatment notes also revealed that Ms. Hinson declined to participate in psychotherapy at East Alabama, due to her concerns about insurance approval. (Exhibit B7F; Exhibit B11F). In April 2019, a psychiatrist noted symptoms of tardive dyskinesia (hand shaking) potentially related to anxiety. The psychiatrist prescribed the medication trileptal. (Exhibit B11F/6).

In July 2019, Ms. Hinson did not register any complaints during a visit where she refilled her medications. (Exhibit B11F/10). These factors caused me to limit Ms. Hinson to unskilled work with significant social interaction limitations.

(Tr. 23-24).

The ALJ next considered the opinion evidence regarding Plaintiff's mental impairments.

The ALJ stated:

I find the opinion of the state agency psychological reviewer, Amy Cooper, Ph.D., persuasive (Exhibit B1A). On October 15, 2018, Dr. Cooper opined that Ms. Hinson had a severe mental impairment that limited her to unskilled work with limited social interactions (Exhibit B1A/7-8). I found the record, specifically treatment notes that revealed that psychiatric medication management and psychotherapy produced an improved mood. Doctors treated Ms. Hinson's mental impairments with limited medication changes. I found these factors consistent with Dr. Cooper's opinion. (Exhibit B1F; Exhibit B2F; Exhibit B3F; Exhibit B5F; Exhibit B6F; Exhibit B7F). Dr. Cooper appeared to consider all psychiatric treatments as of October 2018. Subsequent treatment notes did not show that Ms. Hinson needed significant treatment or even significant changes in her medication regimen. (Exhibit B11F).

Dr. Cooper considered the mental status examination that Jack Bentley, Jr., Ph.D., conducted on September 20, 2016 (Exhibit B4F). It seemed that his examination focused primarily on Ms. Hinson's long-term use of Crystal Methamphetamine. Dr. Bentley did opine that Ms. Hinson would have some limitations in her ability

to sustain complex or routine work related tasks. He also saw that Ms. Hinson would have difficulty communicating effectively with co-workers and supervisors. (Exhibit B4F/4). I included limitations to simple, routine, repetitive tasks and social interaction limitations in my mental RFC finding.

The record contained a second psychological consultative examination. On October 11, 2018, Ms. Hinson saw Scott Jay Stewart, Ph.D. (Exhibit B10F). Dr. Stewart opined that Ms. Hinson appeared to have the interpersonal skills required to relate to others in a work setting. She also seemed to have the ability to sustain attention to do repetitive tasks, and the ability to handle the day-to-day pressures of a work environment. (Exhibit B10F). Although I found this opinion persuasive, I still set out limitations to routine, repetitive work as well as social interaction limitations in my mental RFC finding.

(Tr. 24-25).

Although the ALJ may not have gone point-by-point in addressing each factor in 20 C.F.R. § 416.929(c)(3), the ALJ cited the proper standard in assessing Plaintiff's subjective statements and then sufficiently addressed the medical evidence in the record in determining the consistency of Plaintiff's statements with the medical record as a whole.  (Tr. 22-25).  The ALJ cited that throughout 2018 and 2019, Plaintiff reported overall improvement with mood stability and that despite her complaints of auditory hallucinations doctors did not increase the doses of her prescriptions for Cymbalta or Invega.  (Tr. 23).  The ALJ also relied on the opinion of State agency psychological reviewer, Dr. Cooper, who opined that Plaintiff had a severe mental impairment that limited her to unskilled work with limited social interactions.  (Tr. 24, 62-63).  State agency medical consultants are considered experts in Social Security disability evaluation.  20 C.F.R. § 416.913a(b)(1) ("State agency medical ... consultants are highly qualified and experts in Social Security disability evaluation.").  The ALJ specifically found that treatment notes showed that psychiatric medication management and psychotherapy produced an improved mood and that doctors' treatment of Plaintiff's mental impairments with limited medication changes were factors consistent with Dr. Cooper's opinion.  (Tr. 24).  Additionally, the ALJ noted that subsequent

treatment notes did not show that Plaintiff needed significant treatment or even significant changes in her medication regimen. (Tr. 24, 389-400). The ALJ further cited the opinion of Dr. Stewart who opined that Plaintiff appeared to have the interpersonal skills required to relate to others in a work setting and she also seemed to have the ability to sustain attention to do repetitive tasks and the ability to handle the day-to-day pressures of a work environment. (Tr. 24-25, 385-87). Despite finding Dr. Stewart's opinion persuasive, the ALJ nevertheless limited Plaintiff to routine, repetitive work with social interaction limitations. (Tr. 22, 25).

Plaintiff argues that Plaintiff's treatment history supports the severity and nature of her alleged symptoms and that although her symptoms were managed by medications, the antipsychotic and antidepressant medications did not alleviate her symptoms as she continued to struggle. (Doc. 17 at p. 3). However, the ALJ did not discount that Plaintiff had an impairment, but found only that the evidence in the record did not support the severity to which the symptoms allegedly limited Plaintiff's ability to work.[6] "[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms." *Turner*, 2021 WL 3276596, at *9; 20 C.F.R. § 416.929(a) ("[S]tatements about [a claimant's] pain or other symptoms will not alone establish that [a claimant is] disabled."). As explained above, the court finds that the ALJ properly evaluated Plaintiff's subjective complaints in light of the evidence of record and formulated appropriate RFC restrictions to accommodate the limitations arising from her mental impairments. Credibility determinations are the province of the ALJ, *Mitchell*, 771 F.3d at 782, and the ALJ sufficiently

---

[6] Plaintiff argues that the ALJ's citation to good days is not necessarily evidence of no disability, citing *Schink v. Comm'r of Social Sec.*, 935 F.3d 1245, 1268 (11 Cir. 2019), in support. (Doc. 17 at p. 2). This argument is misplaced, however, as in *Schink* the court found that substantial evidence did not support the ALJ's conclusion that Schink's mental impairments were not severe under step two. *Id.* at 1265-68. Here, the ALJ found that Plaintiff's major depressive disorder, recurrent episode, with psychotic features, anxiety disorder, and stimulant use disorder were severe impairments under step two. (Tr. 20).

cited evidence in the record for finding that Plaintiff's statements were not entirely consistent with the record as a whole.  *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (footnote omitted) (The appropriate question for a reviewing court "is not ... whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

Accordingly, the court concludes that the ALJ's decision on this issue is supported by substantial evidence.  *See Lanier v. Colvin*, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) ("The fact that Plaintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.") (citing *Crawford*, 363 F.3d at 1158-59).  Put most simply, "[t]o the extent Plaintiff disagrees with the ALJ's interpretation of that evidence, that is not a ground for remand." *Horne v. Comm'r of Soc. Sec.*, No. 2:20-CV-181, 2021 WL 3023679, at *5 (M.D. Fla. June 28, 2021), *report and recommendation adopted*, No. 2:20-CV- 181, 2021 WL 3022727 (M.D. Fla. July 16, 2021) (citing *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014)); *Mitchell*, 771 F.3d at 782 ("'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.' 'If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.'") (citations omitted).

**B.    The Development of the Record**

"Social Security proceedings are inquisitorial rather than adversarial," and "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).  "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*,

129 F.3d 1420, 1422 (11th Cir. 1997).[7] "This obligation requires the ALJ to develop the claimant's complete medical history for at least the 12 months preceding the month in which the application was filed, assist the Claimant in obtaining evidence from his or her treating sources, and order a consultative examination when such an examination is necessary to make an informed decision." *Rivera Perez v. Comm'r of Soc. Sec.*, No. 6:20-CV-79, 2021 WL 289052, at *2 (M.D. Fla. Jan. 28, 2021); 20 C.F.R. §§ 404.1512(b)(1)-(2), 416.912(b)(1)-(2).

"A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ." *Graham*, 129 F.3d at 1422. The ALJ's obligation to develop the record "exists even if the claimant is represented by counsel or has waived the right to representation." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted). "There must be a showing that the ALJ's failure to develop the record led to evidentiary gaps in the record, which resulted in unfairness or clear prejudice, before the court will remand a case for further development of the record." *Rodriguez-Torres v. Saul*, No. 8:18-CV-1982, 2019 WL 4267955, at *4 (M.D. Fla. Sept. 10, 2019), *aff'd sub nom. Torres v. Comm'r of Soc. Sec.*, 819 F. App'x 886 (11th Cir. 2020). "At a minimum, clear prejudice 'requires a showing that the ALJ did not have all of the relevant evidence before him in the record ... or that the ALJ did not consider all of the evidence in the record in reaching his decision.'" *Rivera Perez*, 2021 WL

---

[7] "The basic duty to develop the record rises to a 'special duty' where the claimant <u>has not waived</u> his or her right to representation <u>and</u> is not represented during the administrative proceedings." *Rivera Perez v. Comm'r of Soc. Sec.*, No. 6:20-CV-79, 2021 WL 289052, at *2 n.3 (M.D. Fla. Jan. 28, 2021) (citing *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995)) (emphasis added). "By implication, where counsel has been waived, the special duty to develop the record does not take effect." *Robinson v. Astrue*, 235 F. App'x 725, 727 (11th Cir. 2007). Here, Plaintiff waived her right to representation after the ALJ apprised her that she had a right to a representative, such as an attorney, to assist her, that the representative would not charge her a fee unless she received benefits and such a fee would be paid out of those benefits, and that some states had legal services that offered free legal representation for those who qualify under their rules. (Tr. 32-36, 115). Thus, the ALJ had only a basic duty to develop the record.

289052, at *3 (quoting *Kelly v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)); *Thomas-Joseph v. Comm'r of Soc. Sec.*, No. 21-11020, 2022 WL 1769134, at *2 (11th Cir. June 1, 2022). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see* 20 C.F.R. § 416.912(a) (stating that "you have to prove to us that you are ... disabled.  You must inform us about or submit all evidence known to you that relates to whether or not you are ... disabled ... .  This duty is ongoing and requires you to disclose any additional related evidence about which you become aware.").

Plaintiff argues, in essence, that the ALJ did not adequately develop the record.  (Doc. 13 at pp. 10-12).[8]  Plaintiff contends that "the ALJ's exploration of [her] psychiatric symptoms was not probative enough," as "[t]he ALJ did not obtain information as to how [her] symptoms affected her ability to perform full-time work;" "[r]ather, he focused on severity of her symptoms, her limited treatment, and work history."  (*Id*. at p. 11).  Plaintiff asserts that "[d]espite a detailed review of the medical record, the ALJ never substantially evaluated [her] allegations regarding the effects of her mental illness."  (*Id*.).  Plaintiff further complains that the "ALJ did not follow up with specific questions designed to assess [her] ability to perform specific mental work-related activities in a competitive work environment."  (Doc. 17 at p. 6).

---

[8] Plaintiff erroneously argues that because she was unrepresented, the ALJ had a heightened duty to develop a full and fair record, which requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  (Doc. 13 at pp. 10-11) (citing *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982)).  As noted previously, because Plaintiff waived her right to representation, the ALJ had only a basic duty to develop the record.  *See Brown*, 44 F.3d at 934-35; *Robinson*, 235 F. App'x at 727; *Graham*, 129 F.3d at 1422 ("However, where the right to representation has not been waived, the hearing examiner's obligation to develop a full and fair record rises to a special duty.") (emphasis added); *see also Smith*, 677 F.2d at 829 ("When a claimant who has not waived his right to counsel represents himself in a hearing, the hearing examiner's obligation to develop a full and fair record rises to a special duty.") (emphasis added).

Plaintiff fails to show that she suffered any prejudice from the ALJ's development of the record.  Although Plaintiff disagrees with the sufficiency of the ALJ's questions, she fails to show that the ALJ did not comprehend the nature of her impairments or otherwise overlooked any other impairment.  The ALJ discussed with Plaintiff what she thought her primary impairments were (Tr. 40, 46), her treatment for these impairments and by whom (Tr. 40-42, 44-46), and her work history and why she believed that her impairments prevented her from working (Tr. 42-47).  In addition to Plaintiff's testimony, the ALJ also considered the function reports, treatment notes, and the opinion testimony.  Plaintiff does not show that any medical records are missing or that there were any evidentiary gaps in the record.  Accordingly, the ALJ adequately developed the record, which in turn sufficiently supports the ALJ's findings.

### C.    Accommodating Plaintiff's Mental Impairments When Fashioning the RFC

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. § 404.1545(a) ("Your residual functional capacity is the most you can still do despite your limitations.").  "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036, at *8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion.").

Plaintiff contends that the ALJ's RFC determination did not account for the ALJ's ratings of Plaintiff's mental impairments at steps two and three of the sequential evaluation process. (Doc. 13, pp. at 12-13).[9]   Specifically, Plaintiff argues that the ALJ's limiting Plaintiff to performing "simple, routine, and repetitive tasks" (Tr. 22) did not address her ability "to ask and answer questions, provide explanations, identify and solve problems, or recognize and correct mistakes" as described in 20 C.F.R. § Pt. 404, Subpt. P, App.1 § 12.00E.1, or address her ability to concentrate for extended periods, maintain regular attendance and follow work schedules, or work around others as described in 20 C.F.R. § Pt. 404, Subpt. P, App.1 § 12.00E.3.  (Doc. 13 at pp. 14, 15).  Plaintiff further argues that in light of the ALJ's finding that she had a moderate limitation in interacting with others (Tr. 21), the ALJ's RFC determination that she could frequently respond appropriately to supervisors, coworkers, and to the public was too vague (Tr. 22).  (Doc. 13 at p. 14).  Lastly, Plaintiff argues that the ALJ's reliance on the opinions of the three psychologists was misplaced, as the objective medical evidence, along with her report of her symptoms that fluctuated, show that she did not have the ability to perform mental work-related

---

[9] The ALJ's rating Plaintiff as having moderate limitations in various functional areas was made pursuant to the psychiatric review technique ("PRT") used in assessing mental impairments. (Tr. 20-21).  *See* 20 C.F.R. § 416.920a(c)-(d).  As the ALJ explained:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

(Tr. 21).  *See* 20 C.F.R. §§ 416.920(a)(4), 416.920a(b)-(d).  "The ALJ is required to incorporate the results of the special technique into her findings and conclusions," but the technique "is separate from the ALJ's evaluation of the claimant's RFC assessment, the latter of which is an assessment of the claimant's ability to do work despite his impairments.  The mental RFC assessment is a more detailed assessment of the claimant's functionality."  *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (internal citations omitted).

functions in a competitive work environment.  (*Id*. at p. 16).

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'"  *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted).  Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed.  *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ... ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted).  Moreover, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician."  *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532, at *4 (S.D. Ala. Mar. 9, 2022).

The court finds that the record demonstrates that the ALJ considered the entire record in concluding that Plaintiff could "perform simple, routine, and repetitive tasks, but not at a production rate pace," she could "make simple work-related decisions," and she could frequently respond appropriately to supervisors, coworkers, and the public.  (Tr. 22).  In determining Plaintiff's RFC, the ALJ cited that Plaintiff reported improvement at follow-up examinations through November 2016 and that throughout 2018 and 2019 she reported overall improvement with mood stability but despite her complaints of continued auditory hallucinations the doctors did not increase the doses of her prescriptions for Cymbalta or Invega.  (Tr. 23, 287, 291, 344-376,

389-400).  The ALJ cited the opinion of State agency psychological reviewer, Dr. Cooper, Ph.D., who opined that Plaintiff had a severe mental impairment that limited her to unskilled work with limited social interactions as being consistent with medical treatment records.  (Tr. 24, 62-63). The ALJ also cited the opinion of Dr. Bentley who opined that Plaintiff would have some limitations in her ability to sustain complex or routine work-related tasks and that she would have difficulty communicating effectively with co-workers and supervisors—factors in which the ALJ considered in limiting her to simple, routine, repetitive tasks and social interactions.  (Tr. 24, 261). In addition, the ALJ cited the opinion of Dr. Stewart who opined that Plaintiff was able to understand basic directions and appeared to have the interpersonal skills required to relate to others in a work setting and that she was able to sustain the attention necessary to do repetitive tasks and handle the day-to-day pressures of a work environment.  (Tr. 24-25, 387).  The ALJ also previously noted at step three that Plaintiff reported she had no problems with authority figures.  (Tr. 21, 189).

Although Plaintiff cites to her psychiatric diagnoses, complaints of auditory hallucinations, and episodic depression to support her argument for further RFC restrictions (Doc. 13 at pp. 13-17), the record reflects that the ALJ considered evidence related to her symptoms and diagnoses and determined that she remained able to perform simple, routine, and repetitive tasks, but not at a production rate pace, and that she could make simple work-related decisions.  (Tr. 22-25).  The medical evidence supports the ALJ's RFC determination, which properly accounted for Plaintiff's mental impairments.  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled light work, despite moderate limitations in concentration, persistence, or pace, then a hypothetical limiting the claimant to only unskilled work sufficiently accounts for such limitations); *Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 712-13 (11th Cir. 2015) (holding

that the ALJ sufficiently accounted for plaintiff's moderate limitations in concentration, persistence, or pace by limiting him to simple, routine, and repetitive tasks, which medical evidence showed he could perform); *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950-51 (11th Cir. 2013) (holding that the evidence supported the ALJ's conclusion that plaintiff could perform non-complex tasks despite moderate difficulties in maintaining concentration, persistence, or pace).

Here, the record demonstrates that the ALJ's RFC determination was supported by substantial evidence. "Under a substantial evidence standard of review, [Plaintiff] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)). Plaintiff failed to meet that burden.

## V.     Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes that the Commissioner's decision is due to be **AFFIRMED**.  A separate judgment will issue.

**DONE** this the 29th day of March 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**